Mr. Anderson, glad to hear from you. Good morning, Your Honors. May it please the Court, my name is Tim Anderson. I'm counsel for the appellant Thomas Faulls. There's a lot of ground to cover and so I will skip some of the facts and get into the substantive issues. You can take, we know the facts of the case. You can go right to your legal argument. Thank you, Your Honors. And let me say, if there's some fact we're not sure about, we'll ask you. Very well, thank you, Your Honor. There is, obviously it appears from the Court's docket and from the orders of this Court, that the sex offender registry is of considerable importance to this Court. Although it is a matter of first impression, it is the least important issue to my client because whether he's a sex offender or not is of very little consequence as he has a 30-year sentence to serve. So I will touch on that. I do believe that it's a matter of first impression and it needs to be adjudicated by this Court, but it's the least important to my client. Do you think the answer to that should be what? Should he have to register? Very quickly then on that, he should not. 42 U.S.C. 16911, which is commonly called the Sonar Statute, lays out when you have to register and under the Amiya Isaiah expansion of 5Aii, the convictions that he sustained, which is 18 U.S.C. 2261, is not a listed statute that it should be on the registry list. The only reason he was ordered to be registered is because the Western District has a standing order that gives the Court discretion to do it. Well, wasn't he guilty of a sex offense? Well, but that sex offense is not listed as an offense in the statute, and without that, the Congress listed the statutes that go on the offender list. If you take the facts in concert that maybe he raped his wife, well, the jury found that he raped his wife, that would be a sex offense, but that offense, that interstate domestic violence statute, is not enumerated in 16911, not even under the ZILA expansion. So if it's not there, he can't be, he can't go on there, and even the government said at trial, and should say today, that there is no law on this either way. There is no guidance from a court. The only guidance was the standing order from the District Court, which gives the Court discretion to do it. They gave themselves their authority to do it, and that would not be, if it's not in the federal statute, he should not be listed, registered, registrable. Even though the enhancement was part of the elements of the offense, and he was found, I mean, the jury found me out of reasonable doubt that he had committed a sex offense, correct? Sure, but that's under the domestic violence, the interstate domestic violence statute. I understand that, but it was one of the elements. I think they had to find that because it was the aggravated sexual battery portion that triggered it, but for whatever reason, Congress doesn't enumerate this statute under SONAR. I mean, should somebody who rapes their wife be on the sex offender registry list? Probably, but it's not enumerated in the statute, and if it's not enumerated, the court can't do it. They can't just make a decision as to when it should go on there. Congress needs to fix it. When you say it's not enumerated, you're saying that the domestic violence offense is not enumerated. Right. But certainly rape is. Well, right, but he wasn't convicted of rape. He was convicted of kidnapping. Well, yeah, not formally. Yeah, he wasn't charged with rape. He wasn't convicted of rape. It was part and parcel. You have to wait until he finishes his question to you. Yes, sir. I'm so anxious. I know you are, but you're going to have to hold on for a minute. Yes, sir. Let him ask your question. Yes, sir. So there was no formal conviction of the offense, but the jury did find de facto the elements of that offense as part of its deliberation. So why are you making a distinction here? Because the statute requires it? Is that what you're saying? That's right. That's right, because you can only go on the sex offender registry by statute, not by offense. It's by the enumerated statutes that were conveyed. The Congress doesn't give a court the discretion to just add them on there if it's an underlying sex offense. He wasn't charged with an enumerated statute. Even under the EMEA's Iowa expansion, Congress didn't fix it. It's a problem Congress needs to fix, but this court can't just add somebody to it if it's not an enumerated statute under that expansion. You mean the court can't look at clear language of the statute and say it says something else? The clear language is omitted. That statute isn't omitted. That wasn't the question I asked you. I said you don't think the court can look at the statute and see something missing or something doesn't make sense and decide how to make it make sense? I think under strict construction, the court doesn't have the authority to do that. It can only interpret the statutes, and for whatever reason. Your answer presumes that the court always follows strict construction. I'm in the Fourth Circuit, so I was hoping so. I didn't say you weren't smart. Thanks. But, again, that's an issue of first impression. Whatever remark the court chooses to make on this. Your argument on that is it's not an enumerated listed statute, so it can't be done to him, and you don't really want to talk about that much anymore. Right, because it doesn't matter. My guy is going to die in prison. Just before we move on, can I ask you a question? Did you object? I mean, you say you did not per se object. That's an interesting issue, Judge Harris. The objection, I would argue, was preserved at 510-2224 of the appendix and also in Joint Appendix 481. The defendant denied sexually assaulting his wife at 481, and counsel for the defendant casually states, we object to a sex offender classification, but we leave it to the discretion of the court. It's there to that extent that they weren't consenting to and were objecting to it. Okay. The government says that what the defense lawyer said was we denied from the beginning that this is a sex offense, so just reiterating kind of the factual innocence argument but not really objecting to sort of the statutory construction point. Right. I agree. There's not a specific point where they said I object to this, but at 510-2224, counsel does say we object to this as a sex offense, but we'll leave it to the discretion of the court. That's what his counsel says. Right. I see that. Okay. But so you are, is your position today that that was a sufficient objection? I would say that's preserved for the purposes of this court's being able to review that issue. It wasn't ignored, and it was clearly brought before the court's attention. The most important issue to my client is the ineffective assistance of counsel claim. This is a direct appeal. I realize it's rare that this court would consider this on direct appeal. However, it's fairly clear that there was a travesty of a mistake here by his trial counsel. At court, there was this massive battle between the defendant and the government to exclude a domestic violence expert. The court ruled that that expert should come out. However, the government brought the expert, anticipating that his counsel would make a mistake, and he did. At court, he asked a very pivotal question to a bartender about whether he felt the victim was free to leave. And in that particular situation, he opened the door to letting this domestic violence expert testify after he had already got the expert excluded. The court admonished trial counsel on the record about that and then let the witness come in. We have this impending snowstorm with the court rushing this case along, in my opinion, and the last witness they heard was this damning domestic violence expert. I have to prove two things for ineffective. One, that counsel standards were below minimums, which I would say they were in this case, and two, that there was a substantial injurious effect to the defendant. Letting this domestic violence expert come in and testify as to all of the state of mind of the victim. Well, he or she, I can't recall if it was a he or she, did not testify specifically as to the victim. The expert made some general statements about how domestic violence victims might react in circumstances, but it was very general testimony. It wasn't linked to the victim in this case. I agree, but her testimony was very persuasive. Reading it, it summarized all of the government's evidence into an expert opinion that someone of the victim's state of mind would have been under this spousal domestic violence mindset, which is the whole case. I mean, keep in mind, we have a husband taking his wife to West Virginia, and the issue is, was the wife a captive? Even though she wasn't handcuffed or anything, we all know that, but was she mentally captive to her husband? And this expert opined that somebody in her position would be a mental captive to her husband, even though they're separated, even though she voluntarily came to her husband's house that day. She's somehow under his control, and that all gets summarized by this expert. It was extremely important to the government. They fought tooth and nail to let that expert in and lost, and then they brought the witness anyway contemplating that the trial counsel would make the mistake that he made, and she was able to come in. It was a disastrous evidence that came in. That couple— Contemplating the mistake, that comes from where? That they sure surmised— Well, yeah, because the witness was excluded. Why else bring the witness except that she anticipated it? You know what? At trials sometimes you can ask the judge to reconsider, and a district judge can reconsider, but that's just your surmise. Isn't that correct? That's true. That's my opinion. I agree. But I think that it was very clear when the trial strategy was coming forward that he would have made this, and in fact the judge even said that. You've been careful up until this point. You've been very careful up until this point. I'm not saying that point. You said the government brought that witness because they were anticipating the counsel to make a mistake. That is just your surmise. That is right, Judge. That is my surmise. I don't think that's necessarily your argument. I just say maybe it hurts your argument that maybe that's too far. The point was making that is it was important to the government to have her there, important enough to bring her there, somehow finding and trying to find a way to get her. Well, apparently it was important to them. You said they fought hard to try to get that testimony in, so it was important to them. Yes, it was. Even after it was excluded. Flipping them to 404B, interesting issue under 404B. This is probably the most interesting issue, although I don't know that it flips the case my way. But the four raw factors to let bad evidence come in, bad acts come in, that has to be an element of the crime and probative, reliable, and not overly prejudicial. What the court allowed for the bad acts is post-separation of the parties, the hostile environment that occurred between them while the victim was living at her daughter's house, to come in through the testimony of the victim. It was uncorroborated except for the daughter, which is clearly biased for her mom, and it wasn't an element of this particular offense. The judge let the jury hear of the abusiveness of the husband towards the wife post-separation. What does uncorroborated have to do with anything? Well, it doesn't except that there's— You just argued that. So what's the point that it was uncorroborated except by another person who you said was biased? I mean, that's about 90% of the evidence that you get in a case sometimes. Isn't it confident evidence if one person says it? Well, that's why the Congress allows bad acts to come in. I said you have to answer my question. If somebody wants to testify and they're confident to testify and it's relevant, it doesn't have to be corroborated by anybody, does it? No, but why it's important to come in as bad act evidence is it has to be an element of the offense. This is uncorroborated evidence of the victim. And so Congress lets it come in if it's an element of this particular case. What happened between the husband and the wife post-separation— So if it were corroborated in this case, would it make any difference to your argument? I don't think it would be bad acts. Well, I guess not. I guess not. It would not. That's my point. It would not either way. You made that as your second point that it was uncorroborated, and I asked you the question, and now you kind of concede it doesn't really matter to your argument, does it? That's true. It doesn't matter. It does not matter, except that when we're talking about it coming in. You said that you want to say whatever you can to make it look as bad as it can, really, which is not bad. Okay. Maybe it's not bad. It's not an element of this case. Well, does it have to be an element, or does it— It absolutely has to. Hold on a second. Does it have to be an element, or does it need to be relevant to some other aspect of the case, for example, the victim's state of mind? I think if you look at the raw factors, you have to consider that it has to be an element of the kidnapping or of the marital rape, and that is not—there was some background, sure, but it wasn't an element of what happened. He hadn't kidnapped her before. He hadn't raped her before. There was no allegations of those things. When you look at the raw factors, it has to— What do you cite to for that limitation? Judge Diaz's question is a good one. Where is that limitation that it can't go to something else that's important in the case, like state of mind? Where does that restriction come from? It could go to state of mind. That's what bad acts are for, is to be able to show this guy has a temperament to do these things. Well, but not just the defendant, but the victims. This is a unique crime in the sense that oftentimes the defense will paint a picture of the victim as someone who was not, in fact, victimized, but went willingly with her attacker. But, I mean, I think it's fairly clear and obvious that in some circumstances that's just not accurate, and why can't the government correct that perception of the defense theory of the case? I think it could, except for the fact that in this particular situation what she said was extremely—portrayed this very abusive husband. And it begs the question, if he was— What does that matter, what she said, how she testified? On what basis do you keep that out? It could be true. It could be true, but— So how is it kept out under 404? It's an—well, it's overly— That sounds like a 403 argument to me. All right, then I'll— No, no, no, I don't think it's right then, but it sounds like 403, that it's too prejudicial, more than probable. Well, prejudicial is the fourth prong of the 404 element, so prejudicial falls under 404. Okay. Hey, my time's going up. You saved some time, though. All right, thank you very much. Thank you. Ms. Healy. Good morning. I'm Nancy Healy, Assistant U.S. Attorney for the Western District of Virginia. Since we just talked about 404B and experts, if the court would like me to address that first. Why don't you go straight to SORNA? Okay. So under SORNA, of course, there are various definitions of what a sex offense is. And Amy Zila actually, the expansion— Why don't you answer his question, his approach, which is it's not enumerated, it cannot be used. Right. The government respectfully disagrees with that. By the way, did the government disagree with that at trial and at sentencing? Yes, in a sense. At sentencing— Yeah, let's talk about what in a sense means. I think the government's position was it wasn't a SORNA violation, wasn't it? No, that wasn't entirely correct. I said—the government said that was me. The United States had some questions because essentially there's no law on this particular issue. And frankly, I think we were all— Did you object to the pre-sentence report? I objected on a separate basis, essentially. Or I raised the question concerning the period of supervised release more than anything else. But at the sentencing— Let me say this. I just want to be sure. I don't think it precludes you from arguing otherwise. But you're saying that you did not ever suggest that this conviction was not covered by SORNA. You just said you didn't know. I said I didn't know. There was no information. And I think once I got on appeal, or once we got up on appeal, I started looking into the issue. I just want to be sure what you said below. Correct. I got the impression that you'd said otherwise. But that doesn't mean you couldn't argue it this way anyway, and you've corrected it on the record. So I'll let you make your argument. And I just want to make sure I'm not trying to say something I didn't. I said it was an interesting issue because this had not really been covered before in the law. So the question was whether it would be a sex offender. I thought there were two issues that we dwelt on during the sentencing that had to do with sex offender. And one of them had to do with the period of supervised release. The other one I said that I thought cut likely our way under Apprendi was the issue of whether the interstate domestic violence charge, as enhanced, as charged in the indictment, as proven to the jury beyond a reasonable doubt, became a sex offense. There was no case law on it. And I think I even stated during the sentencing hearing I even consulted with colleagues at Maine Justice. You don't have to keep explaining it to me. Okay. You can go ahead and make your argument. Thank you. Let me ask you this. So my sense of this is that the parties kind of scratched their heads and threw it to the judge. Do you think that the defendant preserved his claim? I do not, actually. I was not sure of that originally, and I think that's why the court ordered supplemental briefing on the issue. And then I started delving into the whole transcript. And from what I could glean from the whole sentencing transcript is that the defendant was attacking more the finding of guilt. So he stated all along, of course, that this was not a kidnapping. It was not an interstate domestic violence. He didn't rape his wife. He didn't do any of the factual allegations. It was more of a voluntary trip that the victim took. The government's position, obviously, as supported by the jury, was that, no, this was a kidnapping. This was done by, you know, intimidation or force. There was a gun in the car, and that he took her across state lines. She did not want to have sex, and he had sex with her anyway. So that was always the position of the government in this case. This is one of those situations where, you know, you look at the statute and you look at, well, what happens on sentencing? And it was an interesting question when we got to sentencing as to whether this should be considered something for which he should register. And as I delved into the issue, I found that it would be contrary to SORNA's goals. It would be contrary, really, to the statute, to Apprendi, to Aileen, to all of the cases that say when you have a factor that increases the sentencing exposure, which this one did by a significant amount, it becomes an element that has to be proven to the jury beyond a reasonable doubt. So that sex offense— Of course, SORNA doesn't say that expressly, and so to the extent that it doesn't, why shouldn't the tie or less than a tie go to the defendant? Because I think what the defendant has done in this case is he has focused on only one definition in SORNA as to what is a sex offense. And if you look at the Amy Zila expansion of sex offense under 42 United States Code Section 169.115a, the very first definition is that a sex offense is a criminal offense that has an element involving a sexual act or sexual contact with another. I would submit to you that I think all of the Chapter 109a offenses, not all of them enhance the sentence like aggravated sexual abuse does, but all of them involve either a sexual act or sexual contact. In this particular case, aggravated sexual abuse, of course, is something that involves a sexual act. I stated a case—I think it was the White case from—it might have been the Fifth Circuit that specifically stated aggravated sexual abuse is, of course, a sex offense because it involves a sexual act. I think if this court were to find that just because interstate domestic violence is not specifically enumerated, it would carve out a huge exception for offenders in terms of where they commit their offenses. Counsel, can I ask you—I'm not worried about the—separate from the enumeration point, assuming that a criminal offense that has an element involving a sexual act is covered. Yes. So I read that, and then I go back to the domestic violence statute under which he was convicted. Yes. And what keeps troubling me is that that separates out offenses from penalties, right? There's a whole section of the statute called offenses. So when I put them together, I'm reading the criminal offense has to have an element involving a sexual act, and then I go to this statute and I see offenses, and there's no sexual act. So I don't understand how you read these two statutes together and then drop down to the penalty part. Because I think when you look at Apprendi and Aileen— That seems like that's a very—to me, that seems like a different question. That's when do you have to prove something to a jury for Sixth Amendment purposes, right? But this is just a question of congressional intent. What did Congress mean when it said a criminal offense that has an element involving a sexual act? And so you're suggesting that Congress meant, through the use of the word element, to kind of incorporate the Apprendi line of cases? That just seems kind of technical for Congress. I think it would have to. If you look at SORNA's—one of SORNA's goals was to eliminate potential gaps and inconsistency in terms of covering sex offenders because it was— sex offenders were treated in different states around the country. And SORNA's overall goal was to make sure there was some consistency to cover everybody in the appropriate situation. So— Why didn't they just say, like, a criminal offense involving a sexual act or sexual contact? I mean, what's—I mean, was this passed after Apprendi? Is it at least possible that Congress meant, through the word element, to incorporate the Apprendi line of cases? Oh, that's a great question. So—I'm trying to remember what your— I can answer that question for you. There's almost no chance that Congress was that detailed and knew what— That's probably true. That's possible. It would be my answer. I don't know. I worked for Congress for 10 years. I just think there's almost no chance they knew that. Not that they aren't well-intentioned, but I just—shocked. That's a good argument that's being made, and you have to respond to it. But it's a mess of a statute. Yes. And I think, you know, it's surprising. I think people are surprised that something that sounds like it would be so simple to enforce actually has caused a lot of litigation on both sides. I'm sorry. And I do think you have to—I think you have to— So the Adam Walsh Act, which passed SORNA, or passed 2250, was in 2006. I know the Amy Zila expansion came out later. But I do think the goal was to encompass anything that would be considered a sex offense. And, you know, every single element except for special maritime and territorial jurisdiction in this case was proved to the jury and found by the jury beyond a reasonable doubt in terms of the aggravated sexual abuse, which we suggest becomes an element of the offense. I think you have to look at—I think a lien-specific language is that when you have something that does raise the statutory maximum, it becomes de facto a new offense. So I think we do have to look at that. I understand what the court is asking concerning, well, why did they say, you know, why is interstate domestic violence just these particular elements? But I think when you take into the conduct and when you take in the sentencing factor, I think the sentencing factor does become an element for purposes of requiring someone to register under SORNA. I'm sorry. No, no. I find this difficult because I think the statutes are hard to read together. On the one hand, I'm sure you're right that Congress's overall purpose was to paint broadly. I have no doubt that that's true. On the other hand, there's the rule of lenity, and this is just—it's complicated. I mean, as you said very candidly, which I appreciate, at the sentencing, it's really uncertain how this is supposed to work. Yes. And I think—I was actually surprised to find there's no cases on point on this issue. So I had to look—I do have to look at the goals of SORNA. But you said you were surprised at sentencing. You now figured it out, though, I take it, that you think it clearly is covered. Well, I delved into it. You know, and frankly, I think we were more concerned with how much time the guy was going to get than what was going to happen when he got out. So I'm just being honest about that. And then I looked into it more after this happened. And I did raise an objection. I raised a question to the PSR because I was concerned and I wanted to make sure. I understand all that. But I'm saying you, in light of all that you did and your concerns, you've now looked at it. You just are making your best argument. You think it is covered, and you have to read the statutes in a way because you think that what— you know, Congress did not clear instruction from them. We do have to deal with the rule of lenity. But you think the best you can put that together, and I guess your argument is since it had to be proved and it was proved, it strikes you as odd that it wouldn't count. I think that is fair to say. And I do think since Apprendi and Aileen has made it clear that prosecutors have that extra burden of proving, enhancing sentencing factors, and saying specifically they become essentially elements of the crime, I think it would be inconsistent with what Congress intended or with the goals of SORNA to carve out an exception that would say that somebody who is convicted of aggravated sexual abuse that occurs in the national forest should be treated differently than someone who takes his wife across state lines and rapes her. And state offenses are covered. Different offenses are covered. 1470, which was at issue I think in the Dodge case and in another case as well, sending obscene material to a minor, that particular charge is not enumerated either. I think it's fair to say that the courts have made a mess of some statutes that Congress probably thought we would never make a mess of, number one. But I think in light of that, it may be fair to say, at least in my opinion, SORNA may be the biggest mess of a statute that I've seen because it really is well-intentioned on a lot of sides, I guess, but it really is a bit of a mess when you try to apply the rules that we normally apply to figure out what we're to do. Don't you think in your dealing with Ed and SORNA, one of those statutes, you sort of suggested that below when you go, gosh, I'm not sure exactly what this means. Admittedly, it has certainly created a lot of litigation, even from the early days of, you know, whether the gap period applied in terms of regulating sex offenders. And there has been inconsistency around the country in terms of how courts have decided the issue. But I do think if you look at the number one goal of SORNA, this is something that should be covered and I think was intended to be covered, especially when you look at the first broad definition under the Amy Zila expansion. You want to go to 404? Sure. That's where you were headed and I stopped you, but make that argument. Well, under 404B, of course. The other side said other things matter more to them than the SORNA issue. Absolutely. Okay. And that's understandable. Tell us about 404. So under 404, well, 404B, of course, has been interpreted to be an inclusive rule and the various examples that are enumerated in 404, here's another thing that's being enumerated, are illustrative. I think the courts have been pretty consistent in saying they're illustrative. In this particular case, I think what's interesting is both defense counsel and the district court were well aware, by their comments or made perfectly clear by their comments, that if we just had that one event that occurred beginning August 22nd, I think it was 2013, if we just had that one event, juries could be confused, jurors would be confused. It's sort of like the expert issue as well. It's hard to understand what a domestic violence victim is going through and why a domestic violence victim like Lori Falls did what she did without knowing some of the history of what happened. In this particular case, too, it's important to note the district court actually limited us to presenting two events. He made it very clear that he didn't want all these spontaneous acts of violence that otherwise may have occurred during the marriage to be introduced at the trial because he said that was more like propensity or character types of evidence. So if you look at the events that the court allowed in, they were limited in scope in terms of time and in terms of what happened. And they were fairly similar. And they really were necessary to complete the story on trial. So the defense was this was a voluntary trip. She could have gotten away. She wasn't restrained. She could do all these things. And we review it for abuse of discretion. You review it for abuse of discretion. And if you look at what happened, she tried to get away from him. The other side said it doesn't go to an element of the crime, that it wasn't corroborated. I think you backed off that. But what about response to his argument? That's not correct. And I believe Justice Diaz had stated, doesn't it also go to state of mind? Promoted me. I'm sorry, Justice Diaz. Maybe promoted me. I'm not sure. And a number of us feel like he should be promoted. There you go. Not because we don't want him with us, but because he should be promoted on the merits. But, yes, no, it definitely goes to there's a variety of cases that state it's important to state of mind. But the other cases that are relevant to state it's important to provide context and to complete the story on trial. I mean, if you look at what Lori tried to do, Lori tried to get away from him back earlier in the summer and tried to get away from him. But he wouldn't let her get away. Well, it's a tough argument to make on a rule of inclusion judged by abuse of discretion when it does offer some evidence that is relevant to the case. That's correct. It's a very tough battle to have to reverse that, I think. Ms. Healy, I got the sense that counsel's primary concern was with your expert and the inclusion, sort of the opening of the door with respect to the expert. Obviously, you wanted him there or her there. There was no question about that. What's your take on whether or not that really was as devastating as counsel thinks it was? Frankly, I think the court was respectfully, I think the district court was wrong in precluding her testimony from the get-go to begin with, yes. And obviously, courts have wide latitude to allow in expert testimony to help a jury understand. Even the defendant's own briefs made it clear that without that testimony and without the 404B, frankly, the jury would have been limited in hearing something and perhaps would have been confused over why Mrs. Falls did what she did. And these types of experts have been approved in these types of cases. Obviously, most domestic violence cases are tried at the state level, but the limited stuff that I've even seen in the federal level in terms of the courts have allowed it to explain why a victim acts how they do, why a victim might want to stay with their accuser or know where the defendant is to make sure they feel safer. So it was truly necessary to explain to the jury why someone would do something that's counterintuitive, I think, to most people. I mean, you always hear people say, domestic violence victims, they should just go away. They could just walk away. She tried to do that. She tried to do that in June of the year that this crime occurred. But he wouldn't let her. He kept coming back after her. So she realized, and her testimony was pretty consistent on this point, she realized that she would have one chance to get away from him, and she had to gain his trust. She had to find the right time and did it pretty methodically, if you listen to her testimony or review her testimony. Well, I mean, that's an argument of admission in the first instance. Correct. But what about the contention that it was a bungled trial strategy to open the door? I'm not sure how that testimony really enhanced anything else. It was consistent with the testimony of the bar patrons who went there as well. It was just a logical extension to say that she wasn't restrained. That was the whole defense. His whole defense was she could have gotten away. She had all these opportunities to get away. I don't know how you don't stumble into opening that door. I'm not sure why the district court chose that point to finally say, ah, now we need the jury to be educated on this issue. But frankly, I think trial counsel's strategy was a sound strategy. And I think, you know, courts have been directed, reviewing courts have been directed not to Monday morning quarterback what somebody does. I think what the questions that were asked of Mr. Juker were they made sense. That's how you prove that she was not restrained and could have gotten away. It was almost a fait accompli that he was going to open the door, I think, to this type of evidence. And the government's position was it should have been open all along. I think this was a reasonable strategy by defense counsel. And frankly, given all the other overwhelming evidence, even if there were to have been found some type of strategy or something that he said that he couldn't have said, he can't prove prejudice. I don't think given all the other overwhelming evidence there's any prejudice shown by the fact that the expert testified. The expert was limited. She was not asked to meet with the victim. She was not asked to diagnose or clinically diagnose, I think was the term used in the defendant's brief. She was just talking about common patterns and characteristics of sex abuse victims and how they feel and what they do and patterns like that. I don't know how you would have avoided that, and I see my time is up. All right. Thank you very much. Thank you very much. Mr. Anderson, you have some time. Thank you, Your Honor. Judge, in viewing the evidence, but for that expert witness testimony and but for the 404B evidence coming in, I believe that there would have been a different result. The 404B evidence was not an element. If you look at page 19 of my brief, I outline what came in. We see allegations that my client told a friend that he killed his wife, the victim, told the wife's friend that he had killed him, that he punched his daughter in the chest, that he's just kind of a, I mean, the portrayal of the 404B evidence that came in is not an element of spousal kidnapping. Keep in mind, the wife was separated at this event.  She voluntarily came to the defendant's house and helped him and voluntarily went, well, I guess that's a question, but went to West Virginia, slept in a hotel, didn't escape, went out, spent the whole day with him, went to a bar, drank, you know, drank at the bar, and then that was when she called the police and asked for, you know, said she was being kidnapped. How my client punched his daughter in the chest or told one of her friends that he killed her is not an element of this particular offense, and it was damning. The ineffectiveness of his counsel in opening the door and letting that expert witness in was damning. The fact that a snowstorm was bearing down and you have the trial judge working the jury until 8 o'clock at night on the first day, telling him to come back the next morning at 8 a.m. It doesn't have to do with anything. It's all in common. No, no, no, wait, wait, wait. You said it before and I let it pass. You said the judge rushed. What did the judge do? He kept the jury until 8 o'clock? He kept the jury until 8 o'clock with one juror having to go home 70 miles that night who said she didn't want to work past 6 because she had a long drive home. I don't think I need to tell you, do I? Jurors don't control the docket and when the court works. Sure, but… By the way, let me say I was a district court for 12 years and I worked past 8 on a number of occasions. And I would try to take the jurors' feelings into account, but you just can't do it. So you think there's something inherently wrong in that fact that he worked until 8 o'clock? That fact in and of itself, no. But in combination… And how does that fact in any way prejudice you or make your case? In combination, we're talking about a violation of due process here. If that was the only fact… No, no, no, wait a minute. Are you suggesting in any way to this court that a judge keeping a jury until 8 o'clock at night is some kind of due process violation? And turning around and working them the next morning at 8 a.m. to beat a snowstorm? The court could have just carried the trial… No, no, no, no. I didn't ask you what a court could do. Your argument to this court, and I want you to think about this very seriously, is you are making the claim that a judge that works a jury until 8 o'clock at night and starts again at 8 o'clock the next morning, that is a due process violation for your client? If you're trying to beat a snowstorm, yes. It seems like that's a good reason to be doing that, to try to beat the snowstorm. I think when somebody's facing 30 years in jail, they should have taken that. No, you have to answer my question first. Is your argument, your argument, is that the judge in this case, by staying until 8 o'clock, 8 p.m. one night, and starting at 8 the next morning, that that is somehow a due process violation? No. It's a due process violation that the lawyer didn't object to it. The lawyer should have objected to it and should have said, we are not rushing this case. Wait one second. That's the ineffective assistance. I guess it's more of a Sixth Amendment violation rather than a due process. And where on your list of arguments does that stand? Is it anywhere near the top? No. It's part and parcel. My client got 30 years in jail. We know that. It's important that the court, as carefully as it can consider my ineffective claims, because that's the only thing we really have to get a new trial. Just because you have it doesn't mean you ought to stand up. Let me just say it's a general rule. Just because you have very little, you shouldn't stand up and make claims that maybe don't help you. I have never heard, maybe I'm wrong and maybe my colleagues at some point will suggest that I'm wrong on this. I've never heard that a judge, knowing bad weather's coming, and he works with a jury until 8 o'clock rather than what, normally stop at 6? Is that right? Sure. Works them for two extra hours. And he starts them at 8 o'clock in the morning instead of what, 8.30 or 9? That that is somehow a due process violation? That to me . . . I just ask again, if you want to make that argument, you can. I'll let you go ahead and take your time and say whatever else you want to say. But I would just say for me that I hope you wouldn't ask me to focus on that very much in you trying to establish your case before us. I would just say that in the totality of everything, my client deserves a new trial. And that is one of the factors. I'm not relying on that entirely, but that is one of the factors. It's part of the ineffectiveness of his trial counsel. I'm going to give you 10, 15 seconds to wrap up since I took your time, but I'll give you . . . Judge, I really actually don't have anything else to say other than the ineffectiveness of his trial counsel, both at the opening the door, letting that witness in, not at least objecting to not rushing the trial, and that expert witness testimony materially affected the outcome of this case, but for those events would have likely resulted in a different result. All right. Thank you very much. And I note that you're court appointed, aren't you? Yes, sir. Thank you for taking the appointment in this case. We have to have lawyers who are willing to do that to make arguments for us, and we appreciate your role in doing that. My pleasure. Thank you very much. We'll step down to great counsel and go directly to the next case. Thank you.
judges: Dennis W. Shedd, Albert Diaz, Pamela A. Harris